The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson and the arguments and briefs of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award except with modifications concerning maximum medical improvement, plaintiff's medical treatment and mileage reimbursement for travel involved in vocational rehabilitation.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at and following the hearing before the Deputy Commissioner, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1 as
 STIPULATIONS
1. All parties are properly before the Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 26 February 1998, an employment relationship existed between plaintiff-employee and defendant-employer.
3. N.C. Farm Bureau was the carrier at risk on 26 February 1998.
4. Plaintiff's average weekly wage on 26 February 1998 was $263.20, yielding a compensation rate of $175.48 per week.
5. On 26 February 1998, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
6. The following I.C. Forms are admitted into evidence as Stipulated Exhibit #2: Forms 18, 19, 22, 24 dated 26 May 1999, Form 24 dated 22 November 1999, Forms 25N, 28, 28T, 28B, 28U, 25T, 25R, 33, 33R, 60, 62 dated 25 March 1999, Forms 62 dated 19 July 1999, Form 63 and the Form 24 received 3 July 2000 after the hearing before the Deputy Commissioner. The attachments to the Form 24's and plaintiff's Responses to Defendants' Form 24's are also a part of the evidentiary record in this matter.
7. Plaintiff's medicals are admitted into evidence as Stipulated Exhibit #3 and include the following:
a. Dr. Scott Sanitate;
b. ProActive Therapy, Inc.;
c. Dr. Brian Szura;
d. Dr. James P. Flanagan;
e. Dr. James Johnson;
f. Cape Fear Valley Medical Center;
g. Crawford and Company; and
h. George Moore and Associates.
8. The issues to be determined involve benefits and medical treatment as a result of plaintiff's compensable 26 February 1998 injury and Form 24 issues with respect to vocational rehabilitation and suitable employment.
 *********** RULING ON EVIDENTIARY MATTERS
The objections contained within the depositions of Dr. Brian T. Szura, Dr. James P. Flanagan, Ted Sawyer and Sharon Eason are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all of the evidence of record, and the reasonable inferences drawn therefrom, the Full Commission adopts with modification the findings of fact found by the Deputy Commissioner and finds as follows
 FINDINGS OF FACT
1. On 26 February 1998, plaintiff was a forty-one year old employed by defendant-employer as a stockperson. Plaintiff had been employed with defendant-employer approximately eleven (11) months at that time.
2. On 26 February 1998, plaintiff sustained a compensable injury by accident arising out of and in the course and scope of his employment with defendant-employer when plaintiff slipped and injured his right knee while carrying a box up the stairs.
3. As a result of this compensable injury, plaintiff received treatment from Dr. James Flanagan, an orthopedic surgeon in Fayetteville. Dr. Flanagan removed plaintiff from work and treated plaintiff's right knee conservatively. When plaintiff's knee did not improve, Dr. Flanagan recommended arthroscopic surgery. Plaintiff had previously undergone three knee surgeries prior to working for defendant-employer.
4. Defendants sent plaintiff to Dr. Brian Szura, an orthopedic surgeon in Cary, for a second opinion regarding surgery. Dr. Szura concurred with Dr. Flanagan's recommendations.
5. On 2 June 1998, Dr. Flanagan performed a right knee arthroscopy revealing that plaintiff had a chondral flap on the medial femoral condyle, which was debrided. In addition, there was a cartilage injury on the underside of plaintiff's kneecap. Plaintiff was diagnosed with chrondromalacia patella as well as chrondromalacia of the medical femoral condyle, also known as osteoarthritis.
6. Plaintiff's condition improved following the surgery. In September 1998 defendants transferred plaintiff's care to Dr. Szura. Dr. Szura concurred with Dr. Flanagan's recommended course of treatment. Dr. Szura continued treatment using pain medications, anti-inflammatories, an aggressive patella femoral rehabilitation program and a knee sleeve.
7. On 12 December 1998, Dr. Szura found plaintiff to be at maximum medical improvement and rated plaintiff with a ten percent (10%) permanent partial disability rating to the right leg. Dr. Szura placed plaintiff under permanent restrictions of no kneeling, stooping, or lifting more than fifty (50) pounds. Dr. Szura also limited plaintiff to no significant work on ladders or climbing stairs more than occasionally.
8. Defendants retained Ted Sawyer, a vocational professional, to assist plaintiff in finding employment within his restrictions. Mr. Sawyer prepared several job descriptions for Dr. Szura's approval and required plaintiff to submit at least six job applications per day.
9. In February 1999, Mr. Sawyer prepared a job description for a Cashier II position, which Dr. Szura approved. This description included running the cash register and allowed plaintiff to sit or stand as needed. The Cashier II position at Amoco paid $5.15 per hour and plaintiff would work 28 to 36 hours per week. The supervisor at Amoco did not review the job description, which Mr. Sawyer prepared.
10. Plaintiff accepted and began the job at Amoco on 12 February 1999. The position had an alternating schedule that required plaintiff to work some short shifts of four to six hours each but also required plaintiff then to work some long shifts of nine hours each. Furthermore, this job required plaintiff to kneel or stoop to stock shelves and place money in the safe. Additionally, plaintiff was responsible for mopping and cleaning bathrooms and lifting as much as 35 pounds. The job description approved by Dr. Szura did not fully enumerate all of the duties of the Amoco cashier's position. Plaintiff received temporary partial disability benefits as a result of the fact that his wages at Amoco were less than those earned while employed with defendant-employer.
11. Plaintiff's right knee pain worsened, and he developed increased atrophy and tenderness. Plaintiff related to Dr. Szura by phone that the nine-hour shifts caused increased pain. Dr. Szura informed plaintiff he could not do anything and encouraged plaintiff to discuss the work hours with Amoco.
12. Plaintiff discussed his difficulties with Sharon Eason, manager at Amoco, and informed Ms. Eason that the nine-hour shifts were causing increased knee pain. Plaintiff requested four to six hour shifts. Ms. Eason informed plaintiff that Amoco could no longer use him at all if he was unable to work the nine-hour shifts. As a result, Amoco terminated plaintiff on 27 April 1999.
13. Ms. Eason confirmed during her deposition that the Amoco position required bending and stooping. Furthermore, during the nine-hour shift, approximately six hours on average is spent standing or walking. The position also required lifting up to 35 pounds. Ms. Eason observed plaintiff limping while working and plaintiff complained to Ms. Eason of knee pain and swelling. The actual description of the Cashier II position at Amoco is contrary to Mr. Sawyer's summary presented to Dr. Szura that stated no lifting in excess of twenty pounds, no significant climbing, stooping or kneeling.
14. Following plaintiff's termination from Amoco, defendants did not reinstate plaintiff's benefits. In May 1999, defendants filed a Form 24 requesting plaintiff's benefits be terminated and alleging plaintiff had misrepresented the physician's restrictions to Amoco.
15. On 2 July 1999, Special Deputy Commissioner Ronnie Rowell filed an Administrative Order stating that he was unable to make a decision regarding the Form 24 and ordered defendants to pay plaintiff's temporary total disability pending resolution by way of a formal evidentiary hearing. Defendants filed a Motion for Reconsideration on 2 August 1999, which Special Deputy Commissioner Rowell denied by Order filed 17 August 1999. Defendants resumed plaintiff's benefits effective 13 July 1999 but have not paid plaintiff's benefits due from 28 April 1999 through 12 July 1999.
16. In May 1999 Ted Sawyer wrote Dr. Szura inquiring whether plaintiff could perform the Cashier II duties, as enumerated through Mr. Sawyer's description, for eight hours a day. Dr. Szura replied that plaintiff was able to perform the job described full-time, eight hours per day. At the time he approved the job description, Dr. Szura had not examined plaintiff since December 1998 and based his opinion on Mr. Sawyer's inaccurate job description. Furthermore, plaintiff experienced difficulty with the nine-hour shift, which Dr. Szura did not address.
17. Although plaintiff attempted to return to Dr. Szura after December 1998, he did not receive authorization until April 1999 and did not actually see Dr. Szura until 24 June 1999. At that visit, plaintiff had daily discomfort and a little crepitation in the patella femoral joint. Plaintiff did have good range of motion and no significant effusion of the right knee. Dr. Szura recommended a referral to a chronic pain specialist such as Dr. Sanitate and kept the previous work limitations in place.
18. In July 1999, Sharon Tobia, the rehabilitation nurse consultant sent Dr. Szura a letter specifically inquiring as to whether plaintiff had any restrictions on the number of hours he could work as a clerk or Cashier II. Dr. Szura checked he had no restrictions on the number of hours in a shift.
19. Defendants filed another Form 24 on 22 November 1999 requesting plaintiff's benefits be terminated because he was offered the position of Fast Food Worker at McDonald's, which was approved 18 November 1999, and plaintiff refused. In addition, defendants alleged that plaintiff refused the position of Industrial Truck Operator on 18 November 1999 which was also approved. Defendants also alleged that plaintiff deliberately sabotaged vocational efforts by providing misleading statements concerning his restrictions to potential employers. The issues contained in this Form 24 are included in this Opinion and Award.
20. On 9 July 1999, plaintiff sought treatment from Dr. Sanitate. Plaintiff continued to suffer right knee pain for which a combination treatment of anti-inflammatories and pain medication was most beneficial.
21. On 25 August 1999, plaintiff received a job offer from McDonald's for a dining room attendant position. The salary for that position was $5.15 per hour working three to five days per week, eight hours each day. Plaintiff's employment was to begin 30 August 1999. Dr. Szura approved the job duties; however, McDonald's withdrew their offer prior to plaintiff beginning work. During the application process, plaintiff expressed to McDonald's that he would have problems lifting and carrying.
22. Plaintiff also talked to other potential employers but there is insufficient evidence to conclude plaintiff was unreasonable in refusing the positions. Plaintiff used a cane during interviews, even though Mr. Sawyer recommended that plaintiff not take the cane to these interviews. Mr. Sawyer also counseled plaintiff regarding his appearance and hygiene. Plaintiff has a beard; and although it may be described as scruffy, plaintiff's appearance did not prevent him from obtaining jobs prior to his compensable injury and did not interfere with plaintiff's good job performance at Amoco.
23. On 16 December 1999, plaintiff underwent a functional capacity evaluation (FCE). During the FCE plaintiff noted some discomfort but gave good consistent effort. Plaintiff demonstrated significant deficits to forward bending and standing, kneeling, crouching, crawling, repetitive squatting, prolonged walking and stair climbing.
24. At the 23 December 1999 visit with Dr. Sanitate, plaintiff's knee was mildly warm, indicating some inflammation around the knee joint. Dr. Sanitate restricted plaintiff to no prolonged standing and recommended frequent change of position.
25. In March 2000 plaintiff returned to Dr. Flanagan and presented with significant tightness in his quadriceps. Accordingly, Dr. Flanagan recommended therapy including stretching and quadriceps rehabilitation.
26. At the 25 May 2000 visit with Dr. Sanitate, plaintiff had full knee extension and greater than 130 degrees of flexion. Plaintiff continued to experience mild warmth appreciated about the peripatellar region. Dr. Sanitate considered plaintiff at maximum medical improvement.
27. At the 15 June 2000 visit with Dr. Flanagan, plaintiff's quadriceps strength had improved as a result of aggressive physical therapy. However, plaintiff still had trouble ambulating and used a cane. Dr. Flanagan injected plaintiff s knee with cortisone.
28. The cortisone injection did not improve plaintiff s symptoms. On 13 July 2000, plaintiff related difficulty when driving the car for more than an hour. Dr. Flanagan did not consider plaintiff a candidate for a total knee replacement. Plaintiff did not have any swelling in his right knee, although he did have some diffuse tenderness circumferentially around the patella.
29. Dr. Flanagan rated plaintiff at maximum medical improvement with a twenty percent (20%) permanent partial disability of his right leg and limited plaintiff to driving no more than two hours at a time. Dr. Flanagan recommended vocational rehabilitation for plaintiff for work within restrictions of essentially sedentary work.
30. On 3 July 2000, defendant filed a Form 24 Application to Suspend Compensation to plaintiff dated 30 June 2000 on the grounds that plaintiff refused to cooperate in a vocational rehabilitation program at Fayetteville Vocational Center for which he was scheduled to attend beginning 25 June 2000. Plaintiff arrived on time but indicated he had to leave within a short time due to his mobile home being moved and because he was without electricity or other utilities. Plaintiff was unable to show up on 27 June 2000 for the same reason but he returned to the Fayetteville Vocational Center on 28 June 2000 to complete paperwork. The next scheduled appointment was 5 July 2000 but defendants filed the Form 24 prior to this appointment. There is no further evidence of record regarding whether defendants allowed plaintiff the opportunity to attend further vocational rehabilitation.
31. Plaintiff's non-participation at Fayetteville Vocational Center was justified due to his personal circumstances regarding the moving of his mobile home. Defendants' failure to allow plaintiff a few days to start participation in the vocational rehabilitation program prior to filing another Form 24 was unreasonable.
32. Plaintiff's termination from Amoco was directly related to his inability to work nine-hour shifts due to his knee pain and swelling. Plaintiff did not refuse to work at Amoco and attempted to work out a schedule, which he could tolerate.
33. The dining room attendant position at McDonald's required too much standing for plaintiff to perform within Dr. Flanagan's restrictions. Additionally, McDonald's withdrew their offer. There in insufficient evidence of record to determine plaintiff was ever offered any further positions, which he should have taken.
34. Although there is evidence in the record that plaintiff has reached maximum medical improvement, the greater weight of the evidence demonstrates that plaintiff has not reached maximum medical improvement or the end of the healing period. Plaintiff is in need of and would benefit from both chronic pain treatment and a vocational rehabilitation program. There is no evidence of record whether plaintiff was allowed to keep the 5 July 2000 appointment with vocational rehabilitation in Fayetteville due to defendant's over-zealousness in attempting to suspend or terminate plaintiff benefits. Under the circumstances of this case, plaintiff would benefit from transferring vocational rehabilitation services to a professional other than Ted Sawyer.
35. Defendant terminated plaintiff's compensation effective 28 April 1999 without first obtaining permission from the Commission. It was not until the Order of 17 August 1999 that defendants resumed payment effective 14 July 1999. At the close of the record before the Deputy Commissioner, defendants had not yet paid benefits from 28 April 1999 through 12 July 1999.
36. Plaintiff resides in Fayetteville and Dr. Flanagan is in Fayetteville. Dr. Szura is in Cary. There is no evidence of record that any of Dr. Flanagan's treatment of plaintiff was inappropriate and there is no evidence of record Dr. Szura's treatment was more beneficial. Due to plaintiff s limitations on travel and Dr. Szura's distance from plaintiff s home, it is more reasonable that Dr. Flanagan be plaintiff's treating physician.
37. Furthermore, as a result of vocational rehabilitation, plaintiff will incur reasonably necessary mileage expenses in an effort to lessen his period of disability.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. On 26 February 1998, plaintiff sustained a compensable injury to his right knee arising out of and in the course of his employment with defendant-employer. N.C. GEN. STAT. § 97-2(6).
2. Plaintiff has not unjustifiably refused suitable employment. N.C. GEN. STAT. § 97-32.
3. As a result of plaintiff's compensable injury and failed attempt to work at Amoco, plaintiff is entitled to total disability from 28 April 1999 and continuing until further Order of the Commission at a weekly compensation rate of $175.48. Although there is evidence of record that plaintiff has reached maximum medical improvement, the greater weight of the evidence demonstrates that plaintiff is in need of additional pain treatment and vocational rehabilitation assistance. N.C. GEN. STAT. § 97-29.
3. Insomuch as defendant terminated compensation benefits without authorization of the Commission, plaintiff is entitled to be paid by defendants at ten percent 10%) penalty on all compensation since 28 April 1999 which was not paid within fourteen days of when such compensation first became due. N.C. GEN. STAT. § 97-18(g).
6. Subject to the limitations of N.C. GEN. STAT. § 97-25.1, plaintiff is entitled to have defendants provide all reasonably necessary medical and vocational treatment arising out of plaintiff 26 February 1998 compensable injury to the extent it tends to effect a cure, give relief or lessen plaintiffs period of disability, including treatment by Dr. Flanagan and mileage reimbursement for vocational rehabilitation. N.C. GEN. STAT. § 97-25 and § 97-25.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following
 AWARD
1. Subject to a reasonable attorney's fee herein approved, defendants shall pay plaintiff total disability benefits at a compensation rate of $175.48 per week from 28 April 1999 and continuing until further Order of the Commission. Those amounts which have accrued shall be payable in a lump sum subject to a reasonably attorney's fee.
2. Subject to a reasonable attorney's fee herein approved, defendants shall pay a ten percent (10%) penalty on all compensation since 28 April 1999 which was not paid within fourteen (14) days of when such compensation first became due.
3. Plaintiff's Motion to Remove Ted Sawyer as plaintiff's vocational rehabilitation professional is hereby GRANTED. Defendants shall provide vocational rehabilitation to plaintiff by a professional other than Ted Sawyer or a member of Mr. Sawyer's Company.
4. Defendants shall pay all reasonably necessary medical expenses incurred by plaintiff, subject to the limitations of N.C. GEN. STAT. § 97-25.1, as a result of his compensable injury for as long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or lessen plaintiff s period of disability including mileage expenses incurred during vocational rehabilitation and the treatment of Dr. Flanagan who is hereby APPROVED as plaintiff s treating physician.
5. Defendant's Form 24's dated 26 May 1999, 22 November 1999 and 30 June 1999 are hereby denied
6. A reasonable attorney's fee of twenty-five percent (25%) of the compensation under paragraphs 1 and 2 of this award is hereby APPROVED for plaintiff's counsel and shall be deducted from those accrued sums due plaintiff and paid directly to plaintiff s counsel. Thereafter, every fourth check shall be forwarded directly to plaintiff counsel.
Defendants shall pay the costs.
This the ___ day of August 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER